# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ELIZABETH L. CANTRELL,           )
                                 )
        Plaintiff,             )
                                 )
v.                               )  Case No. CIV-15-81-SPS
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of the Social)
Security Administration,         )
                                 )
        Defendant.             )

## OPINION AND ORDER

The claimant Elizabeth L. Cantrell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 10, 1983, and was thirty-one years old at the time of the most recent administrative hearing (Tr. 295). She completed the twelfth grade, and has worked as a teacher's aide and cook (Tr. 158, 278). She alleges that she has been unable to work since January 1, 2005, due to a chronic pain skin disorder. (Tr. 153).

## Procedural History

In November 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 31, 2011 (Tr. 23-32). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-12-97-SPS, and remanded the case with instructions to properly consider whether the claimant had a severe impairment at step two (Tr. 348-356). The claimant also filed a subsequent claim for benefits under Title XVI on March 28, 2011. ALJ Bernard Porter issued a written opinion as to that application, finding that the claimant was not disabled in a written opinion dated November 16, 2012, and the claimant also appealed this decision. The Appeals Council then vacated both ALJ Deramus's decision and ALJ Porter's decision, and remanded the cases to be consolidated for resolution of a

number of stated issues, in addition to instructions to, *inter alia,* "[o]btain additional evidence concerning the claimant's shoulder impairment and fibromyalgia in order to complete the administrative record . . . Updated treatment records should be requested . . . The additional evidence may also include, if warranted and available, a consultative physical examination and medical source statements about what the claimant can still do despite the impairments" (Tr. 360). ALJ Doug Gabbard, II, then held a second administrative hearing and again determined that the claimant was not disabled. The claimant timely appealed, and ALJ Gabbard's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404,1567(b) and 416.967(b), with the additional limitations of being unable to fully extend the left, nondominant arm, but able to extend it as far as a computer monitor on a desk in front of her; no overhead reaching with the left arm; no exposure to extreme heat; and the requirement that she must be allowed to sit and stand alternatively every ten to fifteen minutes throughout the workday for the purpose of changing positions but without leaving the workstation (Tr. 272). He then concluded that although she could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, arcade attendant, parking lot attendant, and small product assembler (Tr. 277-279).

## Review

The claimant's sole challenge on appeal is that the ALJ failed to follow the instructions of the Appeals Council to obtain additional evidence and develop the record with regard to her fibromyalgia. The Court agrees that the ALJ failed to follow the order of the Appeals Council, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

In additional to directing the ALJ to obtain additional evidence in relation to the claimant's shoulder impairment and fibromyalgia, the Appeals Council ordered the ALJ to: (i) evaluate the severity of and functional limitations related to the claimant's shoulder impairment, (ii) evaluate the claimant's impairments individually and *in combination*, (iii) evaluate the claimant's subjective complaints, (iv) consider the claimant's maximum RFC *during the entire period at issue*, and (v) evaluate her ability to perform past relevant work and obtain a vocational expert as necessary. On remand, ALJ Gabbard determined at step two that the claimant had the severe impairments of hidradenitis suppurativa, obesity, and shoulder pain status post arthroscopic capsular labral repair, as well as the nonsevere impairments of chronic pain, dysphoria, substance abuse in remission, tobacco abuse, high blood pressure, asthma/bronchitis/chronic obstructive pulmonary disease, hip pain, elbow and hand pain, fibromyalgia, carpal tunnel syndrome, back pain, dyslipidemia, insomnia, gastroesophageal reflux disease, and callosity of the right foot (Tr. 271). The medical evidence in this case has been discussed repeatedly by the various opinions in the record, and will not be duplicated except as

relevant to this appeal. The medical evidence relevant to this appeal reflects that the claimant was treated for chronic pain and/or myalgias, and either a history or assessment of fibromyalgia is repeated throughout the records (Tr., *e. g.*, 222, 629-630, 634, 664, 783, 870, 891). She also repeatedly sought medications for pain relief, although medication and appointment noncompliance was also part of the record (Tr., *e. g.*, 218). Additionally, as noted by the Appeals Council (Tr. 359), the claimant apparently underwent a surgery on her shoulder in October 2012 (Tr. 833), but those records have still not been made a part of the administrative record in this case.

At the administrative hearing before ALJ Gabbard, which took place on September 16, 2014, the claimant's representative objected to the use of the opinions of the state reviewing physician opinions in the record, because they were obtained prior to the completion of the medical record (Tr. 294), and were all obtained in 2010 and 2011. The ALJ overruled the objection without explanation at the hearing (Tr. 294), and did not send the claimant for further consultative examination either before or after the hearing. At the hearing, the claimant testified as to her impairments, including her fibromyalgia and her shoulder. Specifically, she stated that she had her shoulder "reconstructed or they fixed it" but that she still had problems with overhead reaching (Tr. 307), and that she had not been tested for fibromyalgia but that "they just pretty much are sure I have it" (Tr. 308).

In his written opinion, the ALJ enumerated at the outset of his opinion the Appeals Council's multiple directives on remand, but never returned to these directives in the body of his opinion. At step four, the ALJ summarized the claimant's hearing testimony

and some of the medical evidence in the record, including a 2010 consultative examination that he failed to assigned any weight to, then assigned "some weight" to the opinions of the reviewing physicians, noting they were consistent with a finding of "not disabled" but "did not adequately consider the claimant's subjective complaints" (Tr. 277). Notably, despite finding the claimant had the severe impairment of status post arthroscopic capsular labral repair, the ALJ did not mention this procedure, any medical records related to it, or how it affected the claimant's RFC at step four (Tr. 272-277). Additionally, the ALJ made no mention of the claimant's fibromyalgia, or any of her other nonsevere impairments, at step four (Tr. 272-277).

The claimant alleges that the ALJ failed to follow the Appeals Council's remand order with regard to her fibromyalgia, that he erred evaluating the severity of this impairment, and that he should have ordered a consultative examination. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,*

373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. §§ 404.1523, 416.923. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, in this case the ALJ committed the additional reversible error of failing to even mention, much less consider, the "cumulative effect of claimant's impairments" at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). This is of particular concern where, as here, the Appeals Council specifically instructed the ALJ to appropriately account for the claimant's fibromyalgia and all her impairments in formulating an RFC for the entire period at issue.

Additionally, it is true that an ALJ has broad latitude in deciding whether to order a consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."). A consultative

examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166. The ALJ could also request that a state agency physician review the record. But an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *Id.* at 1168. Such discretion, however, is not boundless.

Here, the Appeals Council specifically directed the ALJ to obtain additional evidence as to the claimant's shoulder impairment and her fibromyalgia, including updated treatment records and a consultative physical examination and medical source statements if warranted and available, and further, to consider the claimant's maximum RFC during the *entire period at issue*, including specific references to evidence of record to support her limitations (Tr. 360). In this case, the claimant's representative even objected to the use of the opinions of the state reviewing physicians in the record because they were obtained prior to the completion of the medical record, but the ALJ made no additional effort to either obtain an updated reviewing physician opinion medical source statement *or* a consultative examination. Thus, although the ALJ recited at the outset of his opinion the Appeals Council's multiple directives on remand, he failed to actually address any of them in his written opinion. The Commissioner argues that the Appeals Council's instructions on remand merely required the claimant to send updated treatment records, and that there was not an "unqualified directive" to order a consultative examination. While it is correct that there was not an "unqualified directive" for a consultative examination, the Appeals Council *did order* the ALJ to evaluate the

claimant's RFC during the entire period at issue in this case, but at the close of evidence there was not a recent treating physician medical source statement, consultative examiner's opinion, *or* state reviewing physician opinion. Thus, such an evaluation in this case would have been illuminating because in its absence the ALJ had no opinions as to the claimant's physical RFC, the very point of Appeals Council's remand order. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record. On remand, the ALJ should consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**